**Rayford M. WILSON, Plaintiff-Appellant,**

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION of Missouri, and the Division of Employment Security of the State of Missouri, and Superior Toy and Novelty Corporation, Defendants-Respondents.**

No. KCD 29746.

Missouri Court of Appeals, Kansas City District.

Oct. 30, 1978.

Dale K. Irwin, Legal Aid of Western Missouri, Kansas City, for plaintiff-appellant.

Sharon A. Willis, Kansas City, Rick V. Morris, Jefferson City, for respondent, Division of Employment Sec.

Charles B. Fain, Jefferson City, for respondent, Labor and Industrial Relations Commission of Missouri.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

DIXON, Judge.

This is an appeal from the order of the circuit court affirming the denial by the Labor and Industrial Commission of Missouri of unemployment benefits claimed to be due under Section 288.050 RSMo Supp.1975.

The issue to be determined is whether or not the finding that the employee left his employment voluntarily and without good cause attributable to his work or to his employer is supported by competent and substantial evidence upon the whole record.

The appeals tribunal denied relief to the employee; the Labor and Industrial Commission denied review; and the circuit court affirmed the Commission's decision.

Rayford Wilson was employed by Superior Toy and Novelty Corporation from March, 1975 until August 18, 1976. His primary work was that of a truck driver, but there was evidence that he did other work for the company when he was not needed as a driver. On August 17, Wilson's supervisor, "Henny," asked him to help prepare some stuffed toys for packaging. This is referred to in the record as "smashing bear heads." The job required Wilson to lean into a box that was 5½ feet tall in order to get the toys out. Mr. Wilson testified that this process of leaning into the box hurt his back which he had injured previously while working for Superior Toy. Wilson did not complain about the task on August 17, but when asked to do the same job on the following day, August 18, Wilson refused. Wilson's testimony is the only direct record of the conversation that followed:

Q. And what did you say to the supervisor?

A. How come—I refused to do it because I hurt—it made me hurt—hurt my back. I told him I didn't think I should do it because they were hiring to have people from the labor pool come down there, they should let them do it . . .

Q. What did your supervisor say then?

A. Well, he told me if I didn't do it, time out. So, I went and timed out cause I think I'm being fire my ownself. So, I went home.

On reporting for work the next day, Wilson was given his termination slips.

Wilson's supervisor did not testify at the hearing about the incident that led to Wilson's termination. Rosenberg, the general manager of Superior Toy and Novelty Company, appeared and testified that it was his understanding from talking to the supervisor shortly after the incident, and from his records, that Wilson had refused to work solely on the basis that he thought other workers from the labor pool should have been assigned the work. Although Rosenberg testified that he was aware that Wilson had suffered the original back injury, he had no personal knowledge that Wilson complained or did not complain of the aggravation of that injury at the time of the events on August 17–18.

Upon the close of the hearing, the referee made the following findings:

. . . He [Mr. Wilson] left his work because he was hired as a delivery truck driver, and on August 17, 1976, he was assigned by the plant manager to another job which required him to lean over into a box to get materials out. *This work bothered the claimant's back* because he had injured his back previously. The claimant did not mention any back trouble to his supervisor. On August 18, 1976, the claimant was again told by the plant manager to do the same work he had done the previous day. The claimant refused to do the other work . . .

The Referee finds the claimant left his work voluntarily on August 18, 1976, when he was given the choice of performing the job assigned to him by the employer's plant manager or leaving his work, and the claimant left his work. *Since the claimant did not complain about his back to his employer's plant manager,*

and since he did not file a grievance with his union, the Referee finds that he *did not have good cause attributable to his work or to his employer* for leaving his work. (Emphasis added).

■ The process of appeal from a denial of unemployment benefits and the scope of review in such appeals are controlled by Missouri statutes §§ 288.200, 288.210 RSMo 1969. Since the employee's application for review of the Appeals Tribunal decision was denied, the decision of the Appeals Tribunal is deemed to be the decision of the Industrial Commission for the purpose of judicial review. § 288.200(1).

■ Missouri cases have repeatedly set out the limits of judicial review in these cases. As to questions of fact, Art. V, § 22 of the Missouri Constitution requires that the findings of the Industrial Commission be supported by competent and substantial evidence upon the whole record. The record is to be reviewed in the light most favorable to the decision of the Industrial Commission, and if it is supported by competent and substantial evidence and if the Commission could have reasonably made its findings from the evidence before it, this court must affirm. *Crawford v. Industrial Commission*, 482 S.W.2d 739 (Mo.App.1972); *Von Hoffman Press, Inc. v. Industrial Commission*, 478 S.W.2d 403 (Mo.App.1972); *LaPlante v. Industrial Commission*, 367 S.W.2d 24 (Mo.App.1963).

There can be no doubt that there was sufficient competent and substantial evidence upon the whole record to support a finding that the employee voluntarily quit his employment. The issue focuses upon the conditions under which the employee voluntarily quit.

It is the contention of the employee that the Commission erred as a matter of law in concluding that the employee did not have good cause for leaving. In the argument portion of his brief, the employee argues that the finding of the referee with respect to a lack of complaint by the employee is not justified by the evidence and that the findings of the referee are contradictory. The employee also asserts that there is no requirement in the Missouri law that a complaint of physical difficulty be made by an employee in order to make out on behalf of the employee a case of voluntary quit with good cause. The posture of this case does not require that this latter contention of a requirement of complaint by the employee be met or decided.

The issue to be first decided is whether there is competent and substantial evidence to support the findings of the referee. This requires an examination of the evidence supporting the referee's finding that the employee did not complain, which, in the context of the referee's award, was determinative of his finding that the employee did not have good cause for voluntarily leaving his employment. This is so because the referee found on virtually uncontradicted evidence that the employee was suffering from a back ailment which was aggravated by the tasks assigned.

Reviewing the evidence in the light of this analysis, there was no competent and substantial evidence to find that the employee did not complain. The employee's testimony recited above is less than clear on this issue; but, given its normal intendment and assuming that it was responsive to the question made, the employee did assert that he had advised his supervisor that the work was hurting his back. On the other hand, the only evidence that in any way conflicts with that evidence is the evidence of the general manager as to what the general manager had been told by the supervisor. As noted, the general manager conceded that he did not know one way or the other whether the employee had complained of his back.

■ The evidence of the general manager with respect to the conversations between the employee and the supervisor is plainly and unmistakably hearsay. The question then becomes one of whether or not such hearsay testimony can support the finding of the referee that the employee did not complain. In reviewing the effect of hearsay evidence, it has been squarely held that in the review of administrative pro-

ceedings an administrative agency may not arbitrarily disregard or ignore the testimony of a witness not shown to have been disbelieved or impeached by the agency. *Koplar v. State Tax Commission,* 321 S.W.2d 686 (Mo.1959). Only if the agency makes a specific finding that the undisputed or unimpeached evidence is not entitled to credibility and is unworthy of belief may it be said that the evidence may be disregarded. *Missouri Church of Scientology v. State Tax Commission,* 560 S.W.2d 837 (Mo. banc 1977) *cert. den'd.* —— U.S. ——, 99 S.Ct. 57, 58 L.Ed.2d 95 (1978). It is likewise true that hearsay evidence will not qualify as competent and substantial evidence upon the whole record to support a finding of fact by an administrative agency. *Bartholomew v. Board of Zoning Adjustment,* 307 S.W.2d 730 (Mo.App.1957); *State ex rel. De Weese v. Morris,* 359 Mo. 194, 221 S.W.2d 206 (1949).

The evidence of the general manager was not directly contradictory of the employee's assertion that he informed his supervisor of the difficulty the work was causing him. Being of a hearsay nature, it was insufficient to support a finding of fact that the only reason for the employee's leaving was that others should do the work. This leaves the record devoid of evidence contrary to the employee's assertion that he left his employment because of the physical difficulty he was undergoing, or of evidence to support a finding that he left because others should do the work. Under the authority of *Missouri Church of Scientology,* the referee could have disbelieved the employee's testimony. This the referee did *not* do. His finding that the employee left without good cause is without evidentiary support by competent and substantial evidence upon the whole record because of this failure of a factual or testimonial basis to refute the employee's assertion that he left because his back hurt.

Because of the state of this record, it is not appropriate to make a determination of the right of the employee to unemployment compensation, for it may be that the awkward phrasing of the referee's finding indicates a disbelief of the employee's testimo-

ny as to the notice to the supervisor. It would appear that the only appropriate action to be taken in this case is to remand this case to the circuit court with directions to the circuit court to remand the case to the Division of Employment Security for a new hearing on the employee's claim. At the subsequent hearing upon a new record, the disputed issue of good cause may be determined.

Reversed and remanded with directions.

All concur.